# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| JAMES DUBOSE, #137287, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | NO. 3:26-cv-00649 |
| | ) | |
| TENNESSEE DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This action was originally filed in Davidson County Chancery Court by the pro se plaintiff, James Dubose, an inmate of the Riverbend Maximum Security Institution (RMSI). The case was removed to this Court on May 15, 2026, by Defendants Tennessee Department of Correction (TDOC), Associate Warden Corvelli Haynes, Lt. Samuel Beaver, Lt. Charles Stevens, Sgt. J. Stevens, and Officer Baylee Cothron. (Doc. No. 1). Defendants paid the filing fee. Plaintiff has not opposed the removal. Both Plaintiff and Defendants have filed post-removal motions in this Court.

Plaintiff was granted leave to amend his Complaint on June 22, 2026. (Doc. No. 10). His Amended Complaint (Doc. No. 11) is now before the Court for initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

## I. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint" or

any portion of it is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; see also 42 U.S.C. § 1997e(c).

To determine whether the Amended Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A viable claim is stated under 42 U.S.C. § 1983 if the Amended Complaint plausibly alleges (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." Carl v. Muskegon Cnty., 763 F.3d 592, 595 (6th Cir. 2014).

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," Nat'l Rifle Ass'n of Am. v. Vullo, 602 U.S. 175, 181 (2024) (quoting Iqbal, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Amended Complaint a liberal construction, Erickson v. Pardus, 551 U.S. 89, 94 (2007), by viewing it in the light most favorable to Plaintiff. Inner City, supra.

**B. Allegations and Claims**

In November 2025, Plaintiff approached Lt. Samuel Beaver for help because members of the Crips gang were assaulting him, stealing his property, and hiding their knives in his cell. (Doc. No. 11 at 1). Beaver told Plaintiff he would need to identify the gang members from whom he needed protection, and Plaintiff identified two such gang members. (Id. at 1–2). Beaver then told

2

Plaintiff to pack his property and sent him to "intake." (Id. at 2). At intake, Plaintiff was questioned by Lt. Steward, who told Plaintiff "he knew the Crips were hiding their knives in [Plaintiff's] cell, that's why he kept searching it." (Id.). At Steward's insistence, Plaintiff told him where in his cell the knives were hidden and to which cell Plaintiff's tablet computer had been taken, allowing Steward to retrieve both the knives and the tablet. (Id.). Steward "agreed" that the Crips were aware that Plaintiff had identified them and exposed their misconduct, so Plaintiff "could not return to the compound." (Id.).

Plaintiff was then assigned a cell "where they house people that they charge with Refusing Cell Assignment (RCA)." (Id.). Later that evening, Plaintiff was charged with RCA. (Id.). Plaintiff was told by a disciplinary board officer, Sgt. J. Stevens, that he would continue to be written up for RCA until he went back to the compound. (Id.). When he explained his situation to Stevens, Plaintiff was told "that he had two choices: (1) go back to the compound and face up to the Crips; or (2) plead guilty [to RCA], and [Stevens] would talk to the Unit Manager Sowden about the situation so the [Plaintiff] could stay in the cell he was in with no more infraction for RCA." (Id. at 3). Plaintiff pled guilty to a class B infraction for RCA and received 3 days punitive segregation, 9 months package restriction, and a $4.00 fine. (Id.).

On December 2, 2025, Plaintiff was moved out of the RCA pod to "a max security pod," because of a threat from Crips gang members if he remained in the RCA pod. (Id.). On December 8, 2025, Officer Baylee Cothron asked Plaintiff if he was ready to return to the compound. (Id.). Plaintiff explained that he could not return to the compound because Crips there would kill him. (Id. at 3–4). Cothron wrote Plaintiff up for RCA. (Id. at 4). When the disciplinary charge was heard, Plaintiff reminded the disciplinary board officer, Stevens, that he had previously told Plaintiff that he would not receive any more RCA infractions, and Stevens "just raised his

3

shoulders." (Id.). Plaintiff requested that the reporting official, Cothron, be present before the hearing proceeded so that Plaintiff could exercise his right to question him, but Stevens denied the request, found Plaintiff guilty, and sentenced him to 15 days punitive segregation, 9 months package restriction, and a $4.00 fine. (Id.). Plaintiff wrote to the RMSI warden, Warden Haynes, complaining about the way he was being treated. (Id. at 4–5).

On January 5, 2026, Plaintiff was written up for RCA by Lt. Charles Stevens, and was then moved to a different unit, pod, and cell. (Id. at 5). The hearing on that charge was continued even though the officer's filing for continuance was submitted after the deadline. (Id.). Plaintiff's disciplinary hearing was held on January 21, when he was again found guilty after his request for the reporting official's presence was denied, and was sentenced to 20 days punitive segregation, 9 months package restriction, and a $4.00 fine. (Id.). The same scenario played out again in February 2026, after Lt. Charles Stevens asked Plaintiff if he could be safely assigned to any pod on the compound, and Plaintiff responded that no compound pod was safe. (Id.). Plaintiff was charged with RCA and, as a result of the February disciplinary hearing, was given 30 days punitive segregation, 9 months package restriction, and a $4.00 fine. (Id.).

Plaintiff filed a grievance, in response to which Unit Manager Sowden stated as follows: "There is a specific process for P.C. (Protective Custody) routing and investigations. Failure to cooperate or follow that process results in RCA." (Id. at 6; Doc. No. 11-1 at 8). Plaintiff appealed this response to Warden Haynes and then to TDOC Commissioner Frank Strada. (Doc. No. 11 at 6). Strada's response, dated March 27, 2026, was to remand the matter back "for an impartial hearing." (Id. at 6–7; Doc. No. 11-1 at 4).

On April 24, 2026, Unit Manager Sowden wrote Plaintiff up for RCA. At a hearing five days later, Plaintiff was once again found guilty of RCA and was sentenced to 30 days punitive segregation, 9 months package restriction, and a $4.00 fine. (Doc. No. 11 at 7).

Plaintiff claims that Commissioner Strada, Warden Haynes, Unit Manager Sowden, Lt. Beaver, Lt. Stevens, Sgt. Stevens, and Officer Cothron violated his Eighth and Fourteenth Amendment rights by trying to force him to accept housing on the compound, where he faces a substantial risk of serious harm or death, and by denying his due process right to the impartial hearing of his RCA charges. (Id. at 8–9). He seeks an award of damages, an injunction "to stop the punishment," and an order to "dismiss the infraction and transfer the [Plaintiff] to a more secure prison." (Id. at 9).

## C. Analysis

In a factually similar case, Dunn v. Killingsworth, 984 F. Supp. 2d 811 (M.D. Tenn. 2013) (Haynes, C.J.), the plaintiff alleged that he was compelled to refuse a cell assignment on the prison compound, to protect himself from gang members who threatened to harm him. The plaintiff was not admitted to protective custody because the unit manager believed that he was being manipulative. Thus, the plaintiff was forced to accept the disciplinary penalties that came with refusing his assignment to the compound, in order to avoid the danger that awaited him there. Id. at 813–15.

On initial review, these facts were held to support a plausible claim to relief under the Eighth Amendment. The court provided the following statement of applicable law:

> "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who ... must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citations and internal quotation marks omitted). The Supreme Court has specifically held that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Id.* at 833,

114 S.Ct. 1970 (citations and internal quotations omitted). To state a claim pursuant to the Eighth Amendment, a plaintiff must allege (1) a deprivation that is objectively "sufficiently serious," for example, that the plaintiff is "incarcerated under conditions posing a substantial risk of serious harm," and (2) that the defendant prison official has a "sufficiently culpable state of mind," specifically one of "deliberate indifference" to inmate health or safety. *Id.* at 834, 114 S.Ct. 1970 (citations and internal quotations omitted). Regarding the first prong, "[i]n the abstract, one prison inmate's threat to the health and safety of another inmate is 'sufficiently serious' to satisfy this requirement." *Williams v. McLemore*, 247 Fed.Appx. 1, 9 (6th Cir. 2007). Regarding the second prong, deliberate indifference means "know[ing] of and disregard[ing] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

Dunn, 984 F. Supp. 2d at 815–16. The court concluded that the combination of (1) Dunn's allegation that a gang member threatened his personal safety, (2) his refusal to be transferred to the compound despite incurring RCA charges and penalties, and (3) his allegations "that Defendants subjectively knew of and continue[d] to disregard the excessive risk to Plaintiff's health and safety"—including by "affirmatively den[ying] his requests for protecti[ve] [custody]"—was sufficient to plausibly claim an Eighth Amendment violation. Id. at 816.

Here, as in Dunn, Plaintiff alleges that Defendants know of the threat he faces from Crips gang members because he reported their abuses and their hidden store of knives, and that Defendants even had to move him "out of the RCA pod to 'a max security pod,' because of a threat from Crips gang members if he remained in the RCA pod." (Doc. No. 11 at 3). After Plaintiff pled guilty to the first RCA charge brought against him (believing that he would be allowed to stay in segregated confinement without further such charges) and subsequently was moved to the max security pod in response to a threat against him, he was again charged with RCA. At the disciplinary hearing, he was denied the ability to question the officer who brought the charge. That same sequence played out twice more in the two months that followed. Complaints to the Warden were not fruitful, but the grievance Plaintiff filed with Commissioner Strada concerning the February 2026 disciplinary proceeding resulted in a March 27 remand for an "impartial" hearing.

6

Then, in April 2026, Plaintiff was charged, convicted, and punished for his fifth RCA violation. He has consistently been denied placement in protective custody.

Taking these allegations as true and drawing all reasonable inferences from them in Plaintiff's favor, the Court finds, for purposes of initial review, that the Amended Complaint states plausible Eighth and Fourteenth Amendment claims. These claims will proceed for further development against all Defendants except Commissioner Strada.

The only action allegedly taken by Strada in this case was taken in Plaintiff's favor, when the decision appealed to Strada was "remanded back for an impartial hearing." (Doc. No. 11-1 at 4). This remand decision was made a week after Plaintiff first "informed Commissioner Frank Strada of his situation with his officers and Crips" (Doc. No. 11 at 6; Doc. No. 11-1 at 11), and shortly after Plaintiff sued TDOC (but not Strada) in state court. (See Doc. No. 1-1 at 4–14). Otherwise, the only theory upon which the Amended Complaint appears to seek to hold Strada accountable is a *respondeat superior* theory—that is, a theory that Strada, as TDOC Commissioner, is liable for the actions of his subordinates at RMSI, a TDOC prison. But *respondeat superior* is not an available theory of liability under Section 1983; a supervisor cannot be held liable simply because he failed to act, or because he "was charged with overseeing a subordinate who violated the constitutional rights of another." Peatross v. City of Memphis, 818 F.3d 233, 241 (6th Cir. 2016) (citing Gregory v. City of Louisville, 444 F.3d 725, 751 (6th Cir. 2006)). Allegations of personal involvement are necessary for a Section 1983 plaintiff to claim relief for a constitutional violation. See Murphy v. Grenier, 406 F. App'x 972, 974 (6th Cir. 2011) (citing Gibson v. Matthews, 926 F.2d 532, 535 (6th Cir. 1991)). The Amended Complaint's only allegation of Commissioner Strada's personal involvement fails to support his liability for any alleged harm, he will be dismissed from this action.

7

### III. CONCLUSION

As explained above, the Amended Complaint's claims will be allowed to proceed against all Defendants except Defendant Frank Strada.[1] Defendant Strada is **DISMISSED** from this action.

Plaintiff's Motion to Reconsider the Court's denial of his request for transfer to a different TDOC facility (Doc. No. 13) is **DENIED** without prejudice to his ability to renew his motion for transfer in the future, should his circumstances at RMSI warrant such renewal as the litigation proceeds.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

---

[1] The Court's determination that the Complaint states colorable claims for purposes of this initial screening does not preclude any Defendant from filing a motion to dismiss under Federal Rule of Civil Procedure 12.